**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES EDWARD HELLER,** | : | |
| | : | **Civil Action No. 1:04-CV-1893** |
| **Plaintiff** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **DAVID KEENHOLD, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Pending before the Court is Defendants' collective motion for summary judgment on all of Plaintiff's claims. In response to an order to show cause why Defendants' motion should not be deemed unopposed, Plaintiff, who is proceeding pro se, filed a brief in opposition. For the reasons that follow, Defendants' motion for summary judgment will be granted. Additionally, Plaintiff's pending motions for continued discovery and for permission to obtain affidavits from other prison inmates in support of his claims will be denied.

**I.      Introduction**

This action, commenced on August 24, 2004, represents the latest in a series of civil rights actions Plaintiff has brought against the Monroe County Correctional Facility ("MCCF") and its personnel relating to several periods during which Plaintiff has been incarcerated at the jail.[1] On October 20, 2004, Plaintiff amended the complaint. Defendants filed a timely answer.

Plaintiff brings two distinct claims in this action pursuant to 42 U.S.C. § 1983. First, Plaintiff claims that following his intake at MCCF in April 2004, he was deprived of a copy of a

---

[1]      It appears Plaintiff has been incarcerated in the MCCF on multiple occasions. Plaintiff's other actions against MCCF and its personnel were filed to docket numbers 1:01-CV-1380, 1:01-CV-828, and 1:02-CV-409.

criminal complaint and affidavit of probable cause relating to Plaintiff's prosecution for bank robbery and related offenses. Plaintiff contends that he surrendered copies of the documents when he was booked as a pre-trial detainee, and that the documents were not returned to him. Plaintiff claims the failure to return the documents violated his procedural and substantive due process right of access to the courts in order to defend against the charges against him. Secondly, Plaintiff claims that he was housed in administrative custody at MCCF in retaliation for his filing numerous prior grievances and actions against MCCF personnel, in violation of the First Amendment. Plaintiff seeks injunctive relief, monetary and punitive damages, and other equitable relief.

## II.    Background

On April 8, 2004, Plaintiff was incarcerated in the MCCF as a pretrial detainee. Upon intake, Plaintiff provided the MCCF booking officer with a copy of his criminal complaint and affidavit of probable cause relating to the criminal charges brought against him in Monroe County. Plaintiff was incarcerated at the MCCF as a pretrial detainee awaiting trial on a number of criminal charges relating to bank robbery. On September 1, 2004, Plaintiff pled guilty in Monroe County to two counts of robbery and one count of attempting to elude a police officer. (Defendants' Statement of Material Facts, Ex. A.)

On April 12, 2004, Plaintiff requested representation by a public defender in connection with the criminal charges against him. Defendants represent that Plaintiff's criminal complaint and affidavit of probable cause were thereafter provided to Plaintiff's public defender, and Plaintiff does not dispute this fact. Additionally, Defendants note that these documents were on public file with the Monroe County Clerk of Court and have at all times been a matter of public

2

record.  Defendants claim that they did not retain copies of Plaintiff's criminal complaint or affidavit of probable cause.[2]

At some point shortly after he was incarcerated with MCCF, Plaintiff requested a copy of his criminal complaint and affidavit of probable cause.  On April 14, 2004, Defendant Karl Abel responded in writing that he no longer had possession of either document and that Plaintiff should obtain copies of the documents from his public defender.  (Defendants' Statement of Material Facts, Ex. A at 17.)  Additionally, Defendant Abel advised Plaintiff that he would endeavor to provide copies of other court documents in the possession of MCCF, but that he could not provide the requested criminal paperwork because he did not have it in his possession. (Id. 16.)  At no point during Plaintiff's criminal proceedings, which were ongoing from April 2004 until his guilty plea on September 1, 2004, did Plaintiff request that the court provide him with the requested documents, or otherwise advise the court that he did not have access to such documents.  (Id. 143-165.)  Similarly, the record taken from Plaintiff's criminal proceedings does not indicate that Plaintiff or his counsel ever sought a continuance or any other relief on the basis that Plaintiff had been deprived of his criminal complaint or affidavit of probable cause or any other document.  (Id.)

On April 8, 2004, Plaintiff was assigned to be housed in the B-Unit at MCCF, which is the administrative housing unit at the jail.  MCCF officials have represented that they elected to house Plaintiff in administrative segregation based upon his having had 20 misconduct charges filed against him during prior periods of incarceration at MCCF, and because Plaintiff had been

---

[2]     Although Defendants claim that they did not retain copies of the criminal complaint and affidavit of probable cause, it appears Defendants provided these documents to Plaintiff several months after this action commenced in response to a discovery request.

charged with committing several violent crimes.  Plaintiff's prior misconduct charges included charges for fighting, assault, using abusive language, insolence, and destruction of County property.  (Defendants' Statement of Material Facts, Ex. A at 2.)  During his prior incarceration with MCCF, Plaintiff had been placed in the administrative housing unit on eight separate occasions due to misbehavior.  On May 3, 2004, Defendant Warden Keenhold explained in writing to Plaintiff the reasons for his housing classification, noting his history of misconduct and the fact that Plaintiff had one of the most "abysmal disciplinary records that [he had] seen in a long time."  (Id. 2-3.)  Nevertheless, Warden Keenhold also advised Plaintiff that the MCCF classification committee would continue to monitor Plaintiff's behavior and would consider the possibility of lowering Plaintiff's classification status in the event Plaintiff demonstrated the ability to be housed in the general population.  (Id.)

On May 17, 2004, Plaintiff was moved to A-Unit, which is a maximum security unit at MCCF where he was housed with inmates charged with serious crimes.  On July 7, 2004, Plaintiff was moved back to B-Unit into administrative segregation after he reportedly participated in sabotaging A-Unit's television set to prevent black inmates from watching Black Entertainment Television, a cable television channel that provides programming aimed at African Americans.[3]  (Id. 7.)  Defendants have represented that Plaintiff's participation in this act aggravated tensions within A-Unit.

On October 1, 2004, Plaintiff was transferred from MCCF to the Pike County Correctional Facility.  Defendant is currently incarcerated at SCI-Camp Hill where he is serving

---

[3]     Plaintiff seems to dispute this fact, although he only notes he was not "charged" with this incident.  The infraction was noted in formal correspondence from MCCF staff.

time for his convictions relating to bank robbery.

### III.   Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 249. The nonmoving party receives the benefit of all reasonable inferences. Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Id. at 322.

### IV.   Discussion

As noted above, Plaintiff has brought two separate claims against Defendants, the first concerning the alleged deprivation of certain documents relating to his criminal prosecution, and

the second being a claim that MCCF retaliated against Plaintiff by assigning him to be housed in administrative custody.  These claims will be addressed separately below.

A.      **Retention of Court Documents**

Plaintiff claims that the failure of MCCF personnel to return copies of his criminal complaint and affidavit of probable cause violated his right under the Sixth Amendment of access to the courts and to be aware of the charges that have been brought against him. Additionally, Plaintiff claims that the retention of his legal documents constituted an unlawful search and seizure, in violation of the Fourth Amendment.  Even accepting Plaintiff's allegations regarding the retention of his legal papers as true, his claim does not give rise to a Constitutional violation.

Plaintiff's claim, read liberally, asserts a claim for denial of a prisoner's right to access to the courts under the First and Fourteenth Amendments.  In Bounds v. Smith, 430 U.S. 817 (1977), the Supreme Court addressed whether prisoners have a constitutional right to law libraries and access to persons trained in the law.  Bounds established that prisoners have a fundamental right of access to the courts.  However, before such claims are actionable under 42 U.S.C. § 1983, a court must first determine whether an inmate has actually been detained without meaningful access.  Bounds, 430 U.S. at 823.

Following this holding, courts in this circuit and others have recognized that confiscation or destruction of a prisoner's legal papers may violate a prisoner's right of access to the courts. See, e.g., Zilich v. Lucht, 981 F.2d 694, 695 (3d Cir. 1992); Reid v. Seville, No. 96-2577, 1996 U.S. Dist. LEXIS 10319, * 12-13 (E.D. Pa. July 19, 1996); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986); Simmons v. Dickhaut, 804 F.2d 182 (1st Cir. 1986); Harold X (Smith) v.

Smith, 578 F. Supp. 1373 (E.D. Pa. 1984).

Plaintiff has not asserted that he lacked access to library materials or adequate legal assistance, but has instead alleged that his ability to defend himself against criminal charges brought in Monroe County was compromised by the retention of his criminal complaint and affidavit of probable cause by MCCF officials.  In order to maintain such a claim, courts within this circuit have found that a plaintiff must demonstrate that the alleged deprivation resulted in actual injury.  See Reid, 1996 U.S. Dist. LEXIS at *13-14 (following Vandelft v. Moses, 31 F.3d 794 (9th Cir. 1991)); see also Lewis v. Casey, 518 U.S. 343, 349 (1996) (holding that in order to maintain a viable claim of a Bounds violation, prisoner must be able to show actual injury).

In Zilich, the plaintiff-prisoner filed a claim in district court alleging that he had been denied access to the court when prison officials failed to return all of his legal papers to him following his transfer to another prison.  Zilich, 981 F.2d at 694.  Although the papers and materials were eventually returned to the plaintiff, they were delivered during a hearing in the Court of Common Pleas and materials critical to plaintiff's criminal defense, such as a transcript, a cassette tape of telephone conversations, police reports, and bonding and property papers, were missing.  Id. at 695.  Additionally, a letter relevant to the plaintiff's defense that had been contained in a confiscated Bible was also missing.  Id.  In his complaint, the plaintiff alleged that the missing documents and evidentiary materials were critical to his defense in pending criminal and civil actions.  Id.  The district court dismissed the complaint for failure to state a claim, finding that the plaintiff had an adequate remedy at state law for deprivation of his property.  Id. at 695-96.

The Third Circuit reversed and remanded the case, holding that notwithstanding the

7

availability of post-deprivation remedies for the taking of personal property, the plaintiff had

stated a viable cause of action under 42 U.S.C. § 1983 because his claim was not limited to

deprivation of property, but rather stated a substantive due process claim that the retention of his

materials and documents by prison officials interfered with his right to present a prepared defense

in a pending criminal matter.  Id. at 696.

There are significant distinctions between the issues presented in Zilich and those

presented in the case at bar.  First and most significantly, Zilich concerned a case at the dismissal

stage, and the instant case comes before the Court on a motion for summary judgment.  Whereas

to survive a motion to dismiss, a plaintiff need only have pled facts that would entitle him to

relief, to defeat a motion for summary judgment, a plaintiff must come forward with actual

evidence to create a genuine issue of material fact necessitating trial.  Indeed, the Third Circuit

expressly noted that "Zilich still has before him the formidable task of avoiding summary

judgment by producing evidence 'such that a reasonable jury could return a verdict for [him] . . .

.'"  Zilich, 981 F.2d at 696 (quotation omitted).  In this case, Plaintiff has presented no evidence

that the retention of his legal documents impaired his ability to present a meaningful defense.  It

bears mention that Plaintiff alleged only that a copy of his criminal complaint and affidavit of

probable cause were retained.  Plaintiff does not deny Defendants' assertion that these documents

were provided to Plaintiff's criminal defense attorney months in advance of Plaintiff agreeing to

enter into a knowing and voluntary guilty plea.[4]  Accordingly, the Court finds that Plaintiff has

---

[4]      Plaintiff has also filed papers seeking to open discovery and to permit him to obtain affidavits from other prisoners that would theoretically attest to the MCCF's practice of retaining prisoners' legal documents.  The Court finds that such affidavits, and Plaintiff's basis for seeking them, are irrelevant to the fundamental question of whether Plaintiff was actually harmed by the deprivation alleged in this case.

failed to support with evidence his allegations that the retention of his criminal complaint and affidavit of probable cause caused him actual harm.  For this reason alone, summary judgment is appropriate.

Secondly, the nature of the allegedly retained documents and materials in <u>Zilich</u> are readily distinguishable from the two documents of public record that were withheld from Plaintiff after being turned over to his public defender.  In <u>Zilich</u>, the Third Circuit specifically noted that the plaintiff had allegedly been deprived of actual evidence that might have been used by his counsel in presenting a defense, and that his counsel might not have otherwise had access to the evidence.  <u>Zilich</u>, 981 F.2d at 696 n.4.  In the case at bar, Plaintiff has alleged only that he was deprived of a copy of his criminal complaint and the affidavit of probable cause, both of which were a matter of public record and in the possession of his criminal defense lawyer.[5] Plaintiff has presented no evidence as to how deprivation of these documents – which would have been otherwise available to him and his counsel – impaired his criminal defense.

In a similar case, Judge Giles of the United States District Court for the Eastern District of Pennsylvania dismissed a prisoner-plaintiff's claim that the deprivation of certain legal papers impaired the prisoner's ability to defend himself against criminal charges, finding as follows:

> Allegedly, Reid was deprived of certain legal papers which were

---

[5]     The Third Circuit also noted that Zilich claimed that his criminal defense lawyer was part of the conspiracy that was alleged to have denied him access to the courts.  The Court went on to find that "even if Zilich had been represented by competent counsel, the theft of Zilich's legal materials, <u>including evidence to which his attorney might not have had access</u>, would cast substantial doubt on [the fact that Zilich was represented by counsel] being dispositive of Zilich's access to the courts claim.  <u>Zilich</u>, 981 F.2d at 696 n.4 (emphasis added). Plaintiff has not contended that his defense counsel provided inadequate representation, or that his counsel was deprived of any evidence or other information that would have aided in preparing a defense.

> ultimately returned. . . . [Plaintiff] had eight months to review the
> delayed materials before entering a guilty plea.  He was
> represented by appointed counsel during the period prior to the
> plea and at the plea proceeding.  Although Reid avers that his
> ability to present a defense was adversely affected by the detained
> and missing documents, we note that Reid elected with the
> assistance of counsel to plead guilty to the pending criminal
> charges rather than to proceed to trial.  He cannot reasonably
> assert that his ability to make that election voluntarily was
> influenced or affected by missing or detained documents.  Indeed,
> neither Reid nor his attorney claimed at the plea proceeding that
> the delayed, or missing, papers impaired Reid's ability to enter
> a knowing and voluntary guilty plea.  Under the facts presented,
> Reid was accorded meaningful access to the courts and the delayed
> and missing materials did not constitute a deprivation of
> constitutional magnitude.  Accordingly, his claim for denial of
> access to the court fails.

Reid v. Seville, No. 96-2577, 1996 U.S. Dist. LEXIS 10319, at *17-18 (E.D. Pa. July 19, 1996).

The Court finds the foregoing analysis equally applicable to the instant case.  Defendant was

incarcerated at MCCF in early April 2004 to await charges stemming from bank robbery.  The

record indicates that after Plaintiff was booked into custody, he requested a public defender.

MCCF thereafter provided his legal papers, consisting entirely of a criminal complaint and an

affidavit of probable cause, to Plaintiff's newly-appointed public defender.  Plaintiff was

represented by counsel from April 2004 until he agreed to plead guilty to three charges

approximately five months later, on September 1, 2004.  There is no evidence in the record,

which includes transcripts taken from Plaintiff's pretrial criminal hearings, that either Plaintiff or

his counsel ever asserted that the deprivation of Plaintiff's legal papers – or, more precisely, the

transfer thereof to Plaintiff's lawyer – operated to impair Plaintiff's ability to access the courts, or

appreciate the charges against him, or participate meaningfully in his defense.  Plaintiff has come

forward with no other evidence to support his claims to actual injury resulting from the

deprivation and transfer of his legal papers.

For all of the foregoing reasons, the Court finds that Plaintiff has presented nothing more than allegations and his self-serving conclusions to support his claim that MCCF deprived him on his federal or state constitutional rights by retaining his legal papers and forwarding them to Plaintiff's public defender.  Accordingly, the Court finds that Defendants are entitled to summary judgment on this claim.

### B.    Retaliation

Plaintiff's secondary claim is that the decision by MCCF officials to house him in administrative segregation constituted retaliation "for initiating prior litigation, filing a multitude of administrative grievances and appeals, and for his indication that he intended to continue this course of conduct."  (Am. Compl. ¶ 47.)  Plaintiff notes that his past conduct in prosecuting grievances and litigation is constitutionally protected, and he alleges that his restricted housing classification was designed to prevent him from filing further litigation and to punish him for prior actions.  Additionally, Plaintiff claims that his classification somehow deprived him of his right "to petition the government for a redress of grievances" thereby constituting a separate violation of the First Amendment.  Plaintiff also generally avers that his classification amounted to a denial of equal protection and substantive due process.  As with his claim regarding his legal papers, however, Plaintiff has failed to present any evidence to support his claims of retaliation and other constitutional violations allegedly resulting from his classification.

The Third Circuit has recognized that a prisoner may state a cognizable claim of First Amendment retaliation by alleging that he was assigned to or detained in administrative segregation in retaliation for filing civil rights suits against prison officials.  <u>Allah v. Seiverling,</u>

229 F.3d 220, 224-25 (3d Cir. 2000).  A prisoner alleging retaliation must show (1)

constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a

person of ordinary firmness from exercising his constitutional rights, and (3) a causal link

between the exercise of his constitutional rights and the adverse action taken against him.

Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2005) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d

Cir. 2001)).  If a prisoner demonstrates that his exercise of a Constitutional right was a

substantial or motivating factor in the challenged decision, prison officials may still prevail by

proving that they would have made the same decision absent the protected conduct for reasons

reasonably related to a legitimate penological interest.  Rauser, 241 F.3d at 334.  In announcing

this test, the Third Circuit recognized that the administration of prison conditions is difficult, and

that courts should accordingly "afford deference to decisions made by prison officials, who

possess the necessary expertise."  Id.

      In this case, Plaintiff does little more than offer his assertion that the initial decision by

MCCF personnel to place him into administrative custody was retaliatory.  Defendants counter

that MCCF's Classification Committee followed Pennsylvania statutory guidelines and internal

policy in making the determination to house Plaintiff in administrative segregation upon his

intake at MCCF.  In determining Plaintiff's housing, Defendants considered the nature of

Plaintiff's criminal charges, his previous history of disorder within the facility, and his repeated

failure to follow the facility's regulations.  Defendants also note that in accordance with prison

regulations, Plaintiff was advised that MCCF staff would continue to monitor his classification

and would make adjustments if appropriate.  Defendants further point out that during his brief

incarceration at MCCF, Plaintiff was reported to have tampered with and vandalized prison

property by reprogramming a television set in a manner that caused tension within the prison.
Accordingly, MCCF asserts that Plaintiff's classification was warranted and that his subsequent
behavior validated the Classification Committee's initial assessment.

Even assuming that Plaintiff has made a showing sufficient demonstrate that he had
previously engaged in constitutionally-protected activity, the Court cannot find that Plaintiff's
mere claim that he was housed in administrative custody was the kind of adverse action that
would deter a prisoner of ordinary firmness from exercising his constitutional rights; in fact, it is
clear that Plaintiff's housing status did not deter him from exercising his rights to file a multitude
of grievances against MCCF officials during his incarceration, to which MCCF officials
responded.[6]  Furthermore, even had Plaintiff sufficiently demonstrated that his housing
classification was the kind of adverse action sufficient to deter him from exercising his
constitutional rights, Defendants have responded to Plaintiff's bare allegations by presenting
numerous legitimate, non-retaliatory reasons for Plaintiff's classification.  Defendants have also
shown that Plaintiff was advised that his housing classification would continue to be reviewed,
and that Plaintiff subsequently engaged in behavior that confirmed for MCCF officials that
Plaintiff's restricted housing was warranted.  Plaintiff has not responded with evidence to counter

---

[6]     The Court emphasizes that the Third Circuit has not declared that placing a
prisoner into segregated housing will always constitute adverse action to support a retaliation
claim.  Specifically, the Third Circuit held that whether such classification constitutes adverse
action will depend upon the facts of the case: "Although it is possible that in some cases
placement in administrative segregation would not deter a prisoner of ordinary firmness from
exercising his or her First Amendment rights, we cannot say that such action can never amount to
adverse action.  On the contrary, whether a prisoner-plaintiff has met that prong of his or her
retaliation claim will depend on the facts of the particular case."  Allah, 229 F.3d at 225.  In this
case, Plaintiff's Amended Complaint provides no allegations as to how his classification
operated to deter him from exercising his Constitutional rights.

this showing, and the Court does not find that the limited bases Plaintiff has offered for requiring

additional discovery would provide the necessary support for his claims.  Accordingly, the Court

finds that summary judgment is appropriate on Plaintiff's retaliation claim.

Plaintiff has also averred generally that his classification represented both a denial of

substantive due process and a violation of his right to equal protection.  Plaintiff has offered no

factual allegations to support these claims, and the Court finds that they lack legal merit.  The

Third Circuit has recognized that "placement in administrative confinement will generally not

create a liberty interest." Allah, 229 F.3d at 224 (citing Griffin v. Vaughn, 112 F.3d 703, 706 (3d

Cir. 1997)).  Similarly, Plaintiff has not done any more than merely assert an equal protection

violation and has not included any allegations to support this contention.  Accordingly, the Court

finds Plaintiff's limited averment insufficient to state a viable equal protection claim.

Similarly, Plaintiff has alleged, with no explanation, that his classification in

administrative segregation represented a violation of sections 1 and 26 of Article I of the

Pennsylvania Constitution.[7]  The Court construes this allegation as representing an allegation

similar to Plaintiff's claim of substantive due process violations.  As with that claim, the Court

does not find that Plaintiff's bare allegation regarding his classification in administrative housing

is sufficient to create a liberty interest implicated by either of these state Constitutional

---

[7]      Section 1 of Article I of the Pennsylvania Constitution provides that "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."  Pa. Const. art. I, § 1. Section 26 of Article I of the Pennsylvania Constitution provides that "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."  Pa. Const. art. I, § 26.

provisions.

For all of the foregoing reasons, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claims of retaliation and other Constitutional violations emanating from his classification in administrative segregation.

### C.    Discovery Motions

Plaintiff has filed two motions relating to discovery in this case.  In the first, Plaintiff requested to continue the discovery period to allow him an opportunity to obtain further discovery responses from Defendants.  (Doc. No. 36.)  Plaintiff failed to file a brief in support of this motion, and pursuant to applicable Local Rules, the motion is deemed withdrawn.  See L.R. 7.5 ("Unless otherwise ordered by the court, if supporting legal briefs are not filed within the time provided in this rule [10 days after the filing of the motion] such motion shall be deemed to be withdrawn.").  Furthermore, Plaintiff filed this motion approximately two weeks after this Court had already extended the discovery period for an additional 30 days to allow the parties to conclude their discovery.

In the second motion (Doc. No. 37), Plaintiff seeks a Court order authorizing him to correspond with five inmates of various county jails and state prisons within Pennsylvania. Plaintiff claims that these individuals will provide him "immeasurable assistance" in the prosecution of his case.  (Doc. No. 37, at 2.)  Plaintiff explains that this assistance would entail the inmates corroborating his claims regarding the retention of his legal documents and retaliation.  As with his first discovery motion, Plaintiff failed to file a brief in support and the motion is deemed withdrawn.  See L.R. 7.5, supra.  Furthermore, the Court finds no merit in the motion.  As discussed above, Plaintiff's claims fail on their face:  Plaintiff has failed to allege

15

facts sufficient to state a cause of action regarding his legal documents, and he has failed to allege sufficient facts to support his claim of retaliation.  The fact that the alleged witnesses might corroborate Plaintiff's conclusions and factual assertions is irrelevant, because Plaintiff has failed to allege sufficient facts to support his claims in the first place.

For the foregoing reasons, the Court finds that Plaintiff's discovery motions must be denied.  An appropriate Order follows this memorandum.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES EDWARD HELLER,** | **:** | |
| | **:** | **Civil Action No. 1:04-CV-1893** |
| **Plaintiff** | **:** | |
| | **:** | **(Judge Kane)** |
| **v.** | **:** | |
| | **:** | |
| **DAVID KEENHOLD, et al.,** | **:** | |
| | **:** | |
| **Defendants** | **:** | |

### ORDER

    **AND NOW**, this 24th day of March, 2006, for the reasons set forth in the within

memorandum, **IT IS HEREBY ORDERED THAT:**

    1.    Defendants' Motion for Summary Judgment (Doc. No. 41) is **GRANTED**.

    2.    Plaintiff's Motion for Extension of Time to Complete Discovery (Doc. No. 36) is **DENIED**.

    3.    Plaintiff's Motion for Order Allowing Plaintiff to Correspond with Witnesses Confined in County Jails and State Department of Corrections (Doc. No. 37) is **DENIED**.

    4.    The Clerk of Court shall enter Judgment in favor of Defendants and close the file.

                                                       S/ Yvette Kane

                                                      Yvette Kane

                                                     United States District Judge